474 A.2d 1156

**Robert K. STATES and Lucy P. States, Individually and as Administrators of the Estate of Robert Kenneth States, Jr., Deceased**

v.

**INSURANCE COMPANY OF NORTH AMERICA, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 17, 1983.

Filed April 13, 1984.

Petition for Allowance of Appeal Denied Sept. 4, 1984.

Randolph T. Borden, Hawley, for appellant.

Joseph J. O'Brien, Jr., Scranton, for appellees.

Before SPAETH, President Judge, and WICKERSHAM, BROSKY, ROWLEY, WIEAND, JOHNSON and HOFFMAN, JJ.

HOFFMAN, Judge:

This appeal concerns appellant's denial of appellees' claims for survivor's and work loss benefits pursuant to the

Pennsylvania No-Fault Motor Vehicle Insurance Act, 40 P.S. § 1009.101 *et seq.*, (No-fault Act) arising from the untimely death of their son. Upon review, we find appellees' $5,000 claim for survivor's benefits barred by the applicable statute of limitations; however, we conclude that the work loss claim was timely filed and, accordingly, affirm the $15,000 work loss award.

The decedent, appellees' son, was fatally injured in an automobile accident occurring on March 23, 1977. Decedent's estate recovered $1,500 for funeral expenses from appellant, decedent's insurer. On May 30, 1979, appellees, individually and as administrators of decedent's estate, brought suit against appellant and on October 2, 1979, filed a complaint alleging entitlement to survivor's and work loss benefits under the No-fault Act. Appellant filed on December 14, 1979 a motion for summary judgment based on the No-fault statute of limitations but, subsequent to a hearing, the lower court denied appellant's motion. Following a non-jury trial, the lower court on June 26, 1981, awarded appellees $5,000 in survivor's benefits and $15,000 in work loss benefits, plus interest. Appellant's exceptions to the order were argued before and denied by the lower court en banc. This appeal followed.

Initially, appellant is correct in arguing, and appellees effectively concede, that appellees' claim for survivor's benefits is barred by § 106(c)(2) of the No-fault Act. In *Sachritz v. Pennsylvania National Mutual Casualty Insurance Co.*, 500 Pa. 167, 455 A.2d 101 (1982), our Supreme Court held that "§ 106(c)(2) covers no-fault benefits, including funeral expenses which, like wrongful death damages, are designed to compensate the insured's survivors for the loss they suffer by his death . . . ." *Id.*, 500 Pa. at 174, 455 A.2d at 105. 40 P.S. § 1009.106(c)(2) provides, in pertinent part:

> If survivor's benefits have been paid to any survivor, an action for further survivor's benefits by either the same or another claimant may be commenced not later than two years after the last payment of benefits.

In the instant case, appellees recovered $1,500 for funeral expenses by check dated April 21, 1977, and cashed on or about April 27, 1977. Appellees' action for additional survivor's benefits under the No-fault Act was not commenced until May 31, 1979, clearly more than two years after the estate's recovery for funeral expenses. Accordingly, we agree with appellant that appellees' current claim for survivor's benefits is unquestionably barred by the No-fault statute of limitations.

Appellant contends also that appellees are similarly barred by the statute of limitations from collecting work loss benefits due to decedent's estate. Section 106(c)(1) provides the applicable statute of limitations for actions seeking benefits intended to compensate the insured or his estate. *Sachritz v. Pennsylvania National Mutual Casualty Insurance Co., supra.* Additionally, because only funeral benefits, arising from loss caused by death, have been paid in the instant case, the first sentence of § 106(c)(1) establishes the appropriate time limitation for appellees' action:

> If no-fault benefits have not been paid for loss arising otherwise than from death, *an action therefor may be commenced not later than two years after the victim suffers the loss* and either knowing or in the exercise of reasonable diligence should have known, that the loss was caused by the accident, or not later than four years after the accident, whichever is earlier.

40 P.S. § 1009.106(c)(1) (emphasis added). We must next consider when the "loss" is suffered in order to determine the commencement of the two-year statute of limitations in a case seeking "post-mortem" work loss benefits. The Pennsylvania Supreme Court has recently addressed and answered this question in *Kamperis v. Nationwide Insurance Co.,* 503 Pa. 536, 469 A.2d 1382 (1983). In *Kamperis,* after receiving only funeral expenses from decedent's employer's insurer, plaintiffs commenced an action for work loss benefits against decedent's own insurer. The Superior Court reversed the trial court's $15,000 award, finding the

action barred by § 106(c)(1) because it was filed more than two years after decedent's fatal accident. *Kamperis v. Nationwide Insurance Co.,* 313 Pa. 426, 459 A.2d 426 (1983), *rev'd,* 503 Pa. 536, 469 A.2d 1382 (1983). The Supreme Court reversed the Superior Court and concluded that:

> The plain meaning of the Act is clear: work loss is economic detriment resulting from inability to work and earn a living, *e.g.,* loss of a paycheck .... We hold the statute of limitations contemplates commencement of the period for bringing the action on the date the victim would next have expected to receive compensation for work he would have performed had the motor vehicle accident not occurred.

*Kamperis v. Nationwide Insurance Co.,* 503 Pa. 536, at 541, 469 A.2d 1382, at 1384 (1983). However, noting that a victim sustains economic detriment every time he or she suffers the loss characterized above, the Court concluded that:

> [W]here as here no-fault benefits have not been paid for loss arising otherwise than from death, and the work loss was known to have been caused by the accident, an action to recover work loss benefits under the Act may be commenced (a) within two years from any time the victim suffers work loss as a result of the accident... (b) within two years after the victim's accrued work loss equals the amount recoverable under the Act for work loss, ... and (c) not later than four years after the accident.

*Id.,* 503 Pa. at 541, 469 A.2d at 1384. *See Guiton v. Pennsylvania National Mutual Casualty Insurance Co.,* 503 Pa. 547, 469 A.2d 1388 (1983) (reaffirms limitation period for work loss claims outlined in *Kamperis* ). Further, our Supreme Court has consistently maintained that loss is suffered as it is sustained. *See, e.g., Murphy v. Prudential Property and Casualty Insurance Co.,* 503 Pa. 528, 469 A.2d 1378 (1983) (loss suffered when covered medical service is rendered, not when benefits are denied). *See also Platts v. Government Employees Insurance Co.,*

301 Pa.Superior Ct. 379, 447 A.2d 1017 (1982) (loss sustained when medical services rendered).

In *Kamperis,* because of an insufficient record, the Supreme Court felt compelled to remand for the trial court's determination of when decedent would have received his next paycheck or would have suffered the maximum $15,000 work loss. In the case at bar, however, the parties have stipulated that decedent, had he lived, would have earned in excess of $15,000 during the course of his lifetime. Because of that stipulation, we find it unnecessary to remand and conclude that appellees' action for "post-mortem" work loss benefits was timely filed. According to *Kamperis,* therefore, decedent's estate suffered a loss each time a paycheck was not received. The record here indicates that decedent earned approximately $125 per week while alive. At that rate, his estate would continue to sustain loss for at least two years after the accident, or until the maximum loss had accrued. Because appellees are entitled to bring suit for work loss benefits up until two years after the accrual of the maximum recoverable loss, but no longer than four years after the accident, and because decedent's death occurred on March 23, 1977, and the action for work loss benefits was commenced on May 30, 1979, slightly more than two years after the accident, appellees' action was timely under the *Kamperis* Court's interpretation of § 106(c)(1).

Appellant would argue, however, that notwithstanding our conclusion that appellees' action was timely filed, appellees must prove their dependency on decedent to recover "post-mortem" work loss benefits. We hold that dependency need not be proven for a recovery of work loss benefits. In *Allstate Insurance Co. v. Heffner,* 491 Pa. 447, 421 A.2d 629 (1980), our Supreme Court analogized no-fault work loss benefits to the tort Survival Acts, indicating that it is the *estate* of the deceased victim that is entitled to recover any benefits due. In *Sachritz v. Pennsylvania National Mutual Casualty Insurance Co.,* supra, 500 Pa. at 168, 455 A.2d at 103, the Court furthered its

analysis and characterized work loss benefits not as "survivor's benefits designed to compensate certain designated persons for the damages they suffer as a result of the insured's death ... but simply [as] continuing work loss benefits designed to compensate the decedent's estate for the loss the insured himself suffered by having his earning power cut off by death ...." *See also Freeze v. Donegal Mutual Insurance Co.,* 504 Pa. 218, 470 A.2d 958 (1983) (estate can collect work loss benefits due the insured). Thus, appellees effectively seek to collect decedent's work loss benefits in their representative capacity as administrators of decedent's estate, not as decedent's statutory survivors. *See also Kirsch v. Nationwide Insurance Co.,* 532 F.Supp. 766 (W.D.Pa.1982) (dependency does not have to be demonstrated to recover work loss benefits under the Pennsylvania No-fault Act) and *Daniels v. State Farm Mutual Automobile Insurance Co.,* 283 Pa.Superior Ct. 336, 423 A.2d 1284 (1980) (court cited with apparent approval *Hand v. State Farm Mutual Automobile Insurance Co.,* 2 Kan. App.2d 253, 577 P.2d 1202 (1978), wherein the court noted that Kansas statutory phrase, " 'loss of an injured person's monthly earnings after his or her death' refers to the loss of earning power occasioned by the death of the insured and is not measured by the actual loss of the survivors."). We are, therefore, convinced that the distinction drawn by the Supreme Court in *Heffner* and *Sachriz* between the source of work loss and survivor's benefits indicates that while dependency must be proven by a parent to recover survivor's benefits, *see Chesler v. Government Employees Insurance Co.,* 503 Pa. 292, 469 A.2d 560 (1983),[*] it need not be proven to recover work loss benefits due to the decedent's estate.

---

[*] In *Chesler, supra,* the Supreme Court held that "section 103 of the Act, 40 P.S. § 1009.103, requires a 'child, parent, brother [or] sister' of a deceased victim of an automobile accident to show dependency on the victim as a condition of eligibility for *survivor's benefits.*" Slip op. at 2 (emphasis added). The Court did not mention or imply that dependency must be similarly demonstrated to recover work loss benefits.

Accordingly, we find, in light of the parties' stipulation, that the lower court correctly awarded the maximum amountof work loss benefits to decedent's estate.

Affirmed in part and reversed in part.

JOHNSON, J. filed a concurring and dissenting opinion.

JOHNSON, Judge, concurring and dissenting:

I join that portion of the majority opinion reversing the award of survivor's benefits. However, as I believe the Supreme Court's decision in *Kamperis v. Nationwide Insurance Company*, 503 Pa. 536, 459 A.2d 426 (1983) may result in some confusion, I must respectfully dissent to that portion of the majority opinion which affirms the award of work loss benefits.

The majority in *Kamperis* held that § 1009.106(c)(1) of the No-fault Act (the Act) controls an action brought to recover post-mortem work loss benefits where no-fault benefits have not been paid for loss arising otherwise than from death, citing *Sachritz v. Pennsylvania National Mutual Casualty Insurance Co.*, 500 Pa. 167, 455 A.2d 101 (1982). I have no dispute with this conclusion. Section 106(c)(1) states, in pertinent part, that "an action ... may be commenced not later than two years after the victim suffers the loss ... or not later than four years from the accident, whichever is earlier."

However, I do take issue with the *Kamperis* majority's conclusion that the phrase "suffers the loss" should be interpreted, in a situation where the accident victim dies immediately as a result of the accident, as the date the victim "could next have expected to receive his regular pay for work he would ordinarily have performed in due course, but for the accident." *Kamperis, id.*; 503 Pa. at 540, 469 A.2d at 1384. The Supreme Court went on to hold that the statute of limitations for post-mortem work loss claims runs for two years from that expected pay day, two years from the date the victim's accrued work loss equals the $15,000

maximum, and in no event later than four years after the accident.

A problem with this determination arises in the situation where the victim is unemployed or retired. Clearly, a victim's unemployment at the time of his death does not bar recovery of work loss benefits. 40 P.S. § 1009.205(c); *Marryshow v. Nationwide Mutual Insurance Co.*, 306 Pa.Super. 233, 452 A.2d 530 (1982). Nor does the victim's retirement from employment bar recovery. *Minier v. State Farm Mutual Automobile Insurance Co.*, 309 Pa.Super. 53, 454 A.2d 1078 (1982). Therefore, if the victim was not receiving regular paychecks at the time of the accident and death, when does the statute of limitations commence? Surely, the second part of the holding in *Kamperis* regarding commencement of the limitations period from the date the $15,000 maximum is accrued involves the same dilemma; that there is no practical way for a claimant to calculate when that maximum accrues.

I am aware of the Act's definitions as found in § 1009.-205(d) for calculating probable annual income in these situations, but cannot agree that our legislature meant for claimants of work loss benefits on behalf of deceased victims to be required to make such calculations in order to determine the time by which suit must be commenced. To believe so would again expose the appellate courts of this Commonwealth to the complaint that we have added yet another unintended complication to the Act's oft-litigated interpretation.

The Act defines "loss" as "accrued economic detriment resulting from injury arising out of the maintenance or use of a motor vehicle...". The Act further defines "loss of income" as "gross income actually lost by a victim *or that would have been lost* but for any income continuation plan...". (emphasis added). On the other hand, § 1009.-106(a)(1) suggests that loss does not accrue when injury occurs, but as work loss is sustained.

I do not believe the legislature intended section 106(a)(1) to be interpreted as applicable to work loss recovery for

deceased victims, but merely to indicate that one cannot seek no-fault benefits for potential, yet unsustained, losses. This is evident from the inclusion in the section of not only work loss, but also of allowable expense, replacement services and survivor's loss. It is a generalized provision not capable of narrow interpretation, as performed in *Kamperis*. I agree wholeheartedly with President Judge Spaeth's statement in *Antanovich v. Allstate Insurance Co.*, 320 Pa.Super. 322, 341, 467 A.2d 345, 355 (1983): [1]

> We can think of only one reason for the requirement that work loss benefits are to be paid monthly, namely, that it is not known when, or whether, the victim will be able to return to work. But when an accident results in death, this reasoning is inapplicable. It *is* known that the victim will *not* return to work. The amount of work loss benefits is therefore certain, and there is no need to extend the payments up to a period of fifteen months. (Emphasis in original)

While *Antanovich* did not involve a statute of limitations issue, but whether post-mortem work loss benefits were to be paid monthly or in a lump sum, I find the reasoning persuasive in the instant circumstances. Any other interpretation ignores the obvious; once the victim dies, he or she cannot engage in further employment. Therefore, I believe the limitations period on post-mortem work loss benefits should commence as of the victim's date of death, where the victim dies immediately as a result of the accident.

A second problem arises in *Kamperis* regarding the interest provision found in § 1009.106(a)(2), providing 18% annual interest on claims submitted but not paid within thirty days. If post-mortem work loss only accrues as each anticipated paycheck comes due, must the claimant submit a claim at each of those dates, with interest due thirty days thereafter if not paid? Or could an obligor argue that because the claimant's action may not accrue until the

1. Petition for allowance of appeal filed 10/28/83, 269 W.D.Alloc.Doc. 1983.

$15,000 maximum is reached (according to *Kamperis*) that interest is not owed until thirty days following submission of the anticipated paycheck which would make the total work loss $15,000? Again, what about the situation of the unemployed or retired victim? These questions now remain undecided as a result of *Kamperis*. I believe post-mortem work loss benefits should be paid in a lump sum, *Antanovich, supra,* and with 18% annual interest if not paid within thirty days of the obligor's initial receipt of reasonable proof of loss.

Finally, *Kamperis* needlessly complicates the situation where the claimant institutes an action upon the obligor's failure to pay work loss benefits prior to the accrual of the maximum work loss. In such a situation, the claimant certainly cannot allege, as due, those anticipated paychecks which had not accrued at the time suit is instituted, necessitating multiple actions. Even if a trial court were to consider those paychecks which had accrued after commencement of the action but prior to its determination, it certainly could not take into consideration future anticipated paychecks. Therefore, there would exist little incentive for an obligor to pay periodic work loss benefits as they accrue, absent the provisions of the Act for awarding interest and attorneys fees, as the claimant technically would have to institute a cause of action on each separate accrued paycheck on which work loss benefits remain unpaid.

Since I believe that the analysis and conclusion in *Antanovich* is sound, requiring a lump-sum payment of post-mortem work loss benefits, and since I am unable to reconcile that conclusion with the suggestion in *Kamperis* that—in death cases—"the Act clearly looks to a continuing series of losses," *Kamperis, id.,* 503 Pa. at 540, 469 A.2d at 1384, I am compelled to dissent from that portion of the majority opinion in this case which would hold that the within decedent's estate suffered a loss each time a paycheck was not received, thereby extending the statute of limitations to a date not specified in the majority opinion.