507 A.2d 414

**Carl GRAF, Sr., Administrator of the Estate of Carl Graf, Jr., a/k/a Carl Graf, Deceased and Carl Graf, Sr., in his own right, Appellant,**

v.

**STATE FARM INSURANCE COMPANY.**

Superior Court of Pennsylvania.

Argued Oct. 31, 1985.

Filed April 1, 1986.

128

Richard C. Angino, Harrisburg, for appellant.

Joseph M. Hankins, Philadelphia, for appellee.

Before WICKERSHAM, BECK and HOFFMAN, JJ.

HOFFMAN, Judge:

This is an appeal from the lower court's order granting appellee's motion for summary judgment and dismissing appellant's complaint with prejudice. Appellant contends that (1) the filing of four class actions against appellee, each seeking no-fault work loss benefits, tolled the running of the statute of limitations on appellant's work loss claim and (2) even without the benefit of such tolling, appellant's claim is not time-barred under § 106(c) of the Pennsylvania No-fault Motor Vehicle Insurance Act (No-fault Act), 40 P.S. §§ 1009.101–1009.701, (West Supp.1984–1985), *repealed*

by Act of February 12, 1984, P.L. 26, No. 11, § 8(a), *effective* October 1, 1984. For the following reasons, we affirm in part and reverse in part the lower court's order and remand for further proceedings consistent with this opinion.

On July 3, 1979, appellant's son (the decedent) was killed in an automobile accident. Appellee paid appellant $1,500 as reimbursement for (no-fault) funeral expenses on November 14, 1979. On November 17, 1982, appellant commenced this action against appellee. Appellant, suing as administrator of his son's estate and in his own right, sought recovery of work loss and survivor's benefits under the No-fault Act. After the pleadings were filed, appellee moved for summary judgment. On June 15, 1984, the lower court granted summary judgment in favor of appellee on both appellant's work loss and survivor's benefits claims. This appeal followed.[1]

Summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Pa.R.Civ.P. 1035(b). "The burden rests upon the moving party to demonstrate clearly that there is no genuine issue of material fact." *Day v. Volkswagenwerk Aktiengesellschaft*, 318 Pa.Superior Ct. 225, 231, 464 A.2d 1313, 1316 (1983), *allocatur denied.* "In determining whether there is a dispute of material fact, the court must take that view of the evidence most favorable to the non-moving party, giving to that party the benefit of all favorable inferences that might reasonably be drawn from the evidence...." *Christo v. Brittany, Inc.*, 312 Pa.Superior Ct. 255, 263, 458 A.2d 946, 950 (1983), *allocatur denied.* In our review of the

---

1. "[Appellant's] appeal is limited to the propriety of the Trial Court's granting of [appellee's] Motion for Summary Judgment with regard to [appellant's] claim for no-fault work loss benefits." (Brief for Appellant at 5). Accordingly, we affirm the lower court's order insofar as it grants summary judgment in favor of appellee and dismisses appellant's complaint on appellant's survivor's benefits claim.

lower court's order granting summary judgment, we are limited to reviewing the submitted pleadings and affidavits. *Curry v. Estate of Thompson*, 332 Pa.Superior Ct. 364, 371 n. 2, 481 A.2d 655, 661 n. 2 (1984). With these principles in mind, we turn to appellant's contentions.

Appellant first contends that the filing of class actions against appellee in 1979, 1980, and 1981, each seeking no-fault work loss benefits for certain designated classes, tolled the running of the statute of limitations on his work loss claim. Both parties have extensively and thoughtfully briefed this issue. Appellant, however, is putting the cart before the horse: we need not consider the class action tolling issue if appellant's claim is timely filed under the applicable No-fault Act limitations section. Here, both parties argue that the first sentence of § 106(c)(1) of the No-fault Act, 40 P.S. § 1009.106(c)(1), governs the instant case. We agree.

Section 106(c)(1) provides, in pertinent part:

> If no-fault benefits have not been paid for loss arising otherwise than from death, an action therefore may be commenced not later than two years after the victim suffers the loss and either knows, or in the exercise of reasonable diligence should have known, that the loss was caused by the accident, or not later than four years after the accident, whichever is earlier.

Section 106(c)(1) "covers ... no-fault benefits designed to compensate the insured himself." *Sachritz v. Pennsylvania National Mutual Casualty Insurance Co.*, 500 Pa. 167, 174, 455 A.2d 101, 105 (1982). "Post-mortem" work loss benefits, which appellant seeks here, are such benefits. *Id.*, 500 Pa. at 170–71, 455 A.2d at 103–04. Furthermore, the only no-fault benefits that have been paid by appellee are funeral expenses. *See* Appellee's Answer and New Matter to Appellant's Complaint in Assumpsit ¶ 25; Appellant's Answer to New Matter ¶ 25 (admitting the former); Affidavit of Thomas Maher (Exhibit D to Appellee's Motion for Summary Judgment). Our Supreme Court has held that funeral expenses are no-fault benefits "arising ... from

death."[2] *See Guiton v. Pennsylvania National Mutual Casualty Insurance Co.*, 503 Pa. 547, 469 A.2d 1388 (1983) (funeral expenses, ambulance expenses, and survivor's loss benefits paid; court analyzes post-mortem work loss benefits claim under first sentence of § 106(c)(1) ); *Kamperis v. Nationwide Insurance Co.*, 503 Pa. 536, 469 A.2d 1382 (1983) (funeral expenses paid; same); *cf. Sachritz v. Pennsylvania National Mutual Casualty Insurance Co.*, *supra* at 174, 455 A.2d at 105 ("funeral expenses ... are designed to compensate the insured's survivors for the loss they suffer by his death"). Accordingly, we will analyze the question of the time limitation on appellant's claim on behalf of his decedent's estate for post-mortem work loss benefits, *see Freeze v. Donegal Mutual Insurance Co.*, 504 Pa. 218, 470 A.2d 958 (1983) (estates of deceased victims entitled to work loss benefits), *aff'g* 301 Pa.Superior Ct. 344, 447 A.2d 999 (1982), under the above-cited provision.

> Under the first sentence of § 106(c)(1),
>
> where no-fault benefits arising otherwise than from death have not been paid, an action for recovery of work loss benefits, for the benefit of a victim who was not self-employed, must be commenced within two years of each occurrence of work loss, and *not later than* two years after the victim's accrued economic detriment from work loss reaches the statutory maximum amount recoverable, $15,000, 40 P.S. § 1009.202(b)(2), *and, in any case, not later than* four years after the accident.

*Guiton v. Pennsylvania National Mutual Casualty Insurance Co.*, *supra*, 503 Pa. at 550–51, 469 A.2d at 1389 (emphasis added), *citing Kamperis v. Nationwide Insurance Co.*, *supra*. Therefore, because the instant suit was filed within four years of the accident that killed the decedent, it would be time-barred only if he would have suffered

---

**2.** Funeral expenses are characterized as "allowable expense" under the No-fault Act. 40 P.S. § 1009.103. "No-fault benefits" include "allowable expense." *See id.* (definitions of "no-fault benefits," "basic loss benefits," "net loss," and "loss"); *see also id.* § 1009.202; *Allstate Insurance Co. v. Heffner*, 491 Pa. 447, 453, 421 A.2d 629, 632 (1980).

accrued work loss equal to $15,000 more than two years before the filing of this suit on November 17, 1982.

At the time of his death, the decedent was unemployed.[3] The work loss of a victim who is unemployed is calculated under the No-fault Act as follows:

The work loss of a victim who is not employed when the accident resulting in injury occurs shall be calculated by:

(1) determining his probable weekly income by dividing his probable annual income by fifty-two; and

(2) multiplying that quantity by the number of work weeks, or fraction thereof, if any, the victim would reasonably have been expected to realize income during the accrual period.

40 P.S. § 1009.205(c). Appellee, in both its Second Supplemental Memorandum in Support of its Motion for Summary Judgment and in its brief to this Court, uses the above and other provisions of the No-fault Act in arguing that appellant's "claim began running on October 6, 1980 [when the decedent would have suffered accrued work loss of $15,-000]." (Brief for Appellee at 9); *see also* Appellee's Second Supplemental Memorandum in Support of its Motion for Summary Judgment. We find that appellee, in calculating the decedent's work loss, has failed to carry its burden of demonstrating that there is no genuine issue of material fact in the instant case.

With regard to determining the decedent's probable weekly income, appellee utilizes the following definition of "probable annual income" found in the No-fault Act:

[T]he average annual gross income of a production or non-supervisory worker in the private nonfarm economy

---

**3.** This fact is not of record, but appellant does not dispute it. *See* Brief for Appellant at 35. Appellee also asserts that the decedent was eighteen years old at the time of his accident, *see* Brief for Appellee at 3, but that fact is also not of record. The decedent's age may be relevant in determining when he would have suffered work loss had he survived the accident.

in the state in which the victim is domiciled for the year in which the accident resulting in injury occurs, *for a victim who has not previously earned income from work.* 40 P.S. § 1009.205(d)(C) (emphasis added). Even assuming that appellee's calculations under this subsection are correct,[4] appellee has not proven its applicability to this case. Its assertion that the decedent had "no history of previous employment," (Brief for Appellee at 3), is not of record. Therefore, it is possible that the decedent's "probable annual income" should be calculated pursuant to 40 P.S. § 1009.205(d)(B).[5]

We also find that there is no evidence in the record of when the decedent "would reasonably have been expected

---

**4.** We question appellee's calculations here. First, we note that, while the subsection defines probable annual income "for the year in which the accident resulting in injury occurs," appellee, using figures from the Pennsylvania Bulletin, utilizes income figures from both 1979 (the year of decedent's accident) and 1980 (when "the average annual gross income of a production or non-supervisory worker in the private non-farm economy" was higher than the previous year's figure). *See, e.g., Marryshow v. Nationwide Mutual Insurance Co.,* 306 Pa.Superior Ct. 233, 237, 452 A.2d 530, 532 (1982) (court, in charging the jury in accordance with § 205(d)(C) for its determination of the plaintiff's work loss, used the income figures for the "applicable year"). Furthermore, appellee subtracts from the income figures a twenty percent tax deduction "in accordance with the No-fault Act," (Brief for Appellee at 9), evidently 40 P.S. § 1009.206(b). While that subtraction is generous to appellant because it would lower the decedent's probable weekly income and thus lengthen the time it would have taken him to suffer accrued work loss equal to $15,000, § 206, by its very title, applies to the calculation of "net loss," *see* 40 P.S. § 1009.103 (definitions), not "work loss." Under *Guiton, supra,* and *Kamperis, supra,* in determining when the statute of limitations runs, we look to a victim's "work loss," not "net loss." *See Miller v. Prudential Property and Casualty Ins. Co.,* 344 Pa.Superior Ct. 28, 495 A.2d 973 (1985) (§ 205, "work loss," controls for purposes of determining whether an action for work loss benefits is time-barred). In any event, these matters can be more fully explored upon remand.

**5.** "Probable annual income" is defined in § 205(d)(B) as
the average annual gross income earned by the victim from work during the years in which he was employed, not to exceed three, preceding the year in which the accident resulting in injury occurs, *for a victim seasonably employed or not employed at the time of the accident.*
(Emphasis added).

to realize income during the accrual period." The "accrual period" is "the number of years the deceased victim would have worked had he survived the accident, [and] can be readily established by reference to actuarial tables and other relevant statistical compilations." *Freeze v. Donegal Mutual Insurance Co.*, 301 Pa.Superior Ct. 344, 355, 447 A.2d 999, 1005 (1982), *aff'd*, 504 Pa. 218, 470 A.2d 958 (1983). Here, appellee, in its calculations, simply assumed that, had the decedent survived the accident, he would have received a paycheck the very next week. There is, however, absolutely no factual basis in the record to support such a conclusion. *See Kamperis v. Nationwide Insurance Co.*, *supra*, 503 Pa. at 541, 469 A.2d at 1384–85 (insufficient facts to determine when the decedent would have received his next paycheck; court unable to conclude whether action is timely filed); *Bortner v. CNA Insurance Co.*, 332 Pa.Superior Ct. 406, 409–10, 481 A.2d 679, 681 (same); *cf. States v. Insurance Co. of North America*, 327 Pa.Superior Ct. 28, 33, 474 A.2d 1156, 1158–59 (1984) (record indicates that decedent earned approximately $125 per week while alive).

Accordingly, because there are genuine issues of material fact pertaining to appellant's post-mortem work loss benefits claim, we reverse the lower court's order insofar as it grants summary judgment in favor of appellee and dismisses appellant's complaint on that claim and remand this case for further proceedings consistent with this opinion.[6]

Order reversed in part and affirmed in part; case remanded for further proceedings consistent with this opinion. Jurisdiction is relinquished.

6. Because appellant's claim may be timely filed within the dictates of § 106(c)(1), we decline to consider the class action tolling issue here.