503 Pa. 528 (1983)
469 A.2d 1378
Thomas MURPHY
v.
PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY, Appellant.
Supreme Court of Pennsylvania.
Argued October 26, 1983.
Decided December 30, 1983.
*529 M. Landon Spencer, Philadelphia, for appellant.
Allen Feingold, Philadelphia, for appellee.
*530 Before ROBERTS, C.J., and NIX, LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

OPINION OF THE COURT
ROBERTS, Chief Justice.
At issue on this appeal is the timeliness of an action brought against an insurer under the Pennsylvania No-fault Motor Vehicle Insurance Act, Act of July 19, 1974, P.L. 489, § 101 et seq., 40 P.S. § 1009.101 et seq. (Supp.1983), by an insured who seeks to recover the cost of medical services allegedly rendered over a period in excess of two years as a result of an automobile accident. The Superior Court reversed an order of the Court of Common Pleas of Philadelphia which had granted summary judgment in favor of the insurer, and remanded the record for trial on the entire sum claimed. We vacate the order of the Superior Court and hold, in accordance with section 106(c)(1) of the No-fault Act, that the action was untimely insofar as it sought to recover the cost of medical services rendered more than two years prior to the date on which the action was commenced.
The present action was commenced by appellee Thomas Murphy on May 18, 1979, by the filing of a complaint against appellant Prudential Property and Casualty Insurance Company. Appellant was the insurer under a policy of insurance issued to appellee's sister pursuant to the No-fault Act. Appellee claimed to have resided with his sister on March 16, 1977, the date of an automobile accident which allegedly required appellee to undergo extended medical treatment, performed by five different physicians. The complaint alleged that appellant had refused to make payment of bills totalling $1265 owed to a medical laboratory and the five physicians. Appellee's claims had been formally refused by appellant on April 26, 1979, less than one month prior to the date that the present action was commenced.
Appellant filed an answer and new matter, which averred that appellee and his counsel had failed to submit information *531 to appellant concerning the alleged cause of action in a timely manner, and that appellee's action was time-barred. Neither party made copies of the bills for medical services a part of the record, although the record does contain appellee's answers to appellant's request for admissions, in which appellee acknowledged that he had received medical treatment on dates more than two years prior to the commencement of the action from each of the physicians who were named in the complaint as having provided covered services.
The governing portion of section 106(c)(1) of the No-fault Act requires an alleged victim seeking to recover a "loss" to commence an action against a no-fault carrier
"not later than two years after the victim suffers the loss and either knows, or in the exercise of reasonable diligence should have known, that the loss was caused by the accident, or not later than four years after the accident, whichever is earlier."
40 P.S. § 1009.106(c)(1).[*] A "loss" is defined as an "accrued economic detriment resulting from injury arising out of the maintenance or use of a motor vehicle consisting of, and limited to, allowable expense [(which includes medical expenses)], work loss, replacement services loss, and survivor's loss." § 103, 40 P.S. § 1009.103. Section 106(a)(1) provides that "[n]o-fault benefits are payable monthly as loss accrues. Loss accrues not when injury occurs, but as allowable expense, work loss, replacement services loss, or survivor's loss is sustained." 40 P.S. § 1009.106(a)(1).
In light of these latter provisions of the No-fault Act, particularly section 106(a)(1), which sets forth the legislative concept that a loss "accrues" as an expense is *532 "sustained," it is evident that an alleged victim of an automobile accident suffers a loss for purposes of section 106(c)(1) on the date that an allegedly covered service was rendered. Accord, Platts v. Government Employees Insurance Co., 301 Pa.Super. 379, 447 A.2d 1017 (1982). We hold, therefore, that the governing portion of section 106(c)(1) of the No-fault Act requires a claimant seeking to recover the cost of an allegedly covered service to commence suit within two years of the date that the claimant knew or should have known that the service rendered was necessitated by the accident.
The court of common pleas determined that section 106(c)(1) required appellee to have commenced his action within two years of the date of the accident, which occurred over two years before the action was commenced. This determination is inconsistent with the specific language of section 106(c)(1) which imposes an absolute requirement that suits be brought "not later than four years after the accident." As the Superior Court observed in rejecting the determination of the court of common pleas,
"`[b]y creating an ultimate limitation of four years, the legislature obviously contemplated that the two year statute of limitations would begin to run at some point between that ultimate limitation date and the date of the injury. Therefore, the injury could not have been intended to be the triggering event for the limitations period.'"
312 Pa.Super. 236, ___, 458 A.2d 602, 604 (1983), quoting Myers v. USAA Casualty Insurance Co., 298 Pa.Super. 366, 373, 444 A.2d 1217, 1221 (1982). Further, under the determination of the court of common pleas, a victim is charged both with having suffered an economic detriment and with knowledge of the relationship between the economic detriment and the accident on the date of the accident itself, even though, as is recognized in section 106(a)(1), the economic detriment may in fact not be sustained until well after the date of the accident.
*533 Although the Superior Court correctly rejected the determination of the court of common pleas, the Superior Court incorrectly held that the two-year period of limitation contained in section 106(c)(1) began to run on the date that appellant formally refused to pay appellee's medical bills, less than one month prior to the date that the present action was commenced. In so holding, the Superior Court failed to consider when appellee knew or should have known that the "loss was caused by the accident," an inquiry specifically mandated by the governing portion of section 106(c)(1). Additionally, in deeming a victim not to have suffered an "economic detriment" until the victim's insurer has refused to honor a claim, the Superior Court overlooked the fact that the main reason victims file claims with insurers is to obtain relief from existing economic detriment.
The requirement that actions be commenced "not later than four years after the accident" does not constitute a bar to the present action, as the accident occurred on March 17, 1977, two years and two months prior to May 18, 1979, the date of the filing of suit. Although appellee admitted to having received treatments on various dates more than two years prior to May 18, 1979, and it is clear that appellee at all times knew of the relationship between the medical treatments and the automobile accident, it has not been established whether appellee's action sought in any respect to recover the cost of services provided within two years of May 18, 1979. Accordingly, the order of the Superior Court remanding the record for trial and the order of the court of common pleas granting summary judgment in favor of appellant must be vacated, and the record must be remanded to the court of common pleas for consideration of appellant's motion for summary judgment with leave to both parties to present supplemental proof.
The order of the Superior Court is vacated. The order of the Court of Common Pleas of Philadelphia is vacated and the record is remanded to that court for proceedings consistent with this opinion.
*534 FLAHERTY, J., joins and files a concurring opinion in which NIX, McDERMOTT and HUTCHINSON, JJ., join.
LARSEN, J., files a dissenting opinion.
FLAHERTY, Justice, concurring.
I join the majority opinion authored by Mr. Chief Justice Roberts, but write separately to clarify our holding that pursuant to § 106(c)(1), 40 P.S. § 1009.106(c)(1), an action to recover the cost of medical services covered by the No-Fault Act, Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. § 1009.101 et seq., is timely so long as it is filed no later than two years after the actual receipt of services covered by the Act if the victim knew or should have known that the services rendered were necessitated by the accident.
NIX, McDERMOTT and HUTCHINSON, JJ., join this concurring opinion.
LARSEN, Justice, dissenting.
I dissent.
"If no-fault benefits have not been paid for loss arising otherwise than from death, an action therefor may be commenced not later than two years after the victim suffers the loss and either knows, or in the exercise of reasonable diligence should have known, that the loss was caused by the accident, or not later than four years after the accident, whichever is earlier. . . ." (emphasis supplied)
Pennsylvania No-fault Motor Vehicle Insurance Act, Act of July 19, 1974, P.L. 489, No. 176, Art. I, § 106, 40 P.S. § 1009.106(c)(1).
As I said in my dissent in Kamperis v. Nationwide Insurance Company, 503 Pa. 536, 469 A.2d 1382 (1983), I would construe the above provision of the No-fault Act (40 P.S. § 1009.106(c)(1) to mean that where no-fault benefits arising otherwise than from death have not been paid, the victim suffers the loss when the insurance carrier breaches its obligation to pay the required benefits. Also see my dissent in: Guiton v. Pennsylvania National Mutual Casualty *535 Insurance Company, 301 Pa. 146, 459 A.2d 1251 (1983).
The appellee, Thomas Murphy, was injured in an automobile accident on March 16, 1977. On the date of the mishap, he was residing with his sister who was the named insured under a no-fault insurance policy issued by appellant, Prudential Property and Casualty Insurance Company. Following the accident, the appellee sought and received medical services and treatment from various providers for injuries he allegedly sustained.
By application dated May 29, 1978 and forwarded to appellant on or about May 31, 1978, appellee formally applied for no-fault benefits. Responding to the application, the appellant did not immediately deny the claim. Rather, appellant requested that it be furnished with bills and records relating to the medical treatment received, and verification pertaining to the lost wages claimed. On March 27, 1979, the requested documentation was furnished to the appellant. On April 26, 1979, the appellant, by written letter, refused to pay the no-fault benefits sought by the appellee. Murphy filed suit on May 18, 1979 seeking recovery of the benefits he had been denied.
I would hold that the appellee "suffered the loss" on April 26, 1979 when the appellant declined payment of benefits. The date the appellant refused appellee's application for benefits is the critical date. It is from that time that the appellee had two years to commence an action for benefits; provided however, that such action is brought within four years from the date of the accident. It is not the date when medical services are received or time is lost from employment that initiates the running of the statute of limitations. Rather, it is the insurer's breach of its duty to pay benefits that signals the start of time limitations prescribed by Section 106(c) of the No-fault Act.
I would affirm.
NOTES
[*] Section 106(c)(1) additionally requires that actions for "further benefits" be commenced within two years of the date of the last payment of benefits. See generally Sachritz v. Pennsylvania National Mutual Casualty Insurance Co., 500 Pa. 167, 455 A.2d 101 (1982). This requirement is not presently applicable, as appellant had not paid appellee any benefits in connection with the accident as of the date on which appellee commenced his action.